IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────────────────────

THOMAS A. KLOCK,

       Plaintiff,
  v.                                       Civil Action No.
                                          7:15-CV-1150 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

───────────────────────────────

APPEARANCES:              OF COUNSEL:

FOR PLAINTIFF

CONBOY, McKAY LAW FIRM     LAWRENCE D. HASSELER, ESQ.
307 State Street
Carthage, New York 13619

FOR DEFENDANT

HON. RICHARD S. HARTUNIAN    ELIZABETH D. ROTHSTEIN, ESQ.
United States Attorney           Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on August 16, 2016, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated: August 24, 2016
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------x
THOMAS KLOCK,

                    Plaintiff,

     vs.                                    7:15-CV-1150

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

------------------------------------x
```

*DECISION* - August 16, 2016

James Hanley Federal Building, Syracuse, New York

HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding

A P P E A R A N C E S (by telephone)

| | |
|---|---|
| For Plaintiff: | CONBOY, MCKAY LAW FIRM<br>Attorneys at Law<br>307 State Street<br>Carthage, New York 13619<br>  BY: LAWRENCE D. HASSELER, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>26 Federal Plaza<br>New York, New York 10278<br>  BY: ELIZABETH D. ROTHSTEIN, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1     THE COURT: I have before me an application for a
2  judicial review of an adverse determination by the
3  Commissioner. Review is sought under both Section 405(g) and
4  1383(c)(3) of Title 42, United States Code.
5     The background of this case is fairly extensive and
6  as follows. The plaintiff was born in April of 1988 and is
7  currently 28 years old. He was 21 years old at the alleged
8  onset of his disability. He does have or claims to have a
9  GED diploma, and that includes two years of BOCES course work
10 in conservation and horticulture. He is obese. He stands
11 5-foot 6-inches and has weighed between 320 pounds at the
12 first hearing and 375 pounds at the second hearing, although
13 I did see reference to a weight of over 400 at some point in
14 his medical records. He lives with his girlfriend and the
15 girlfriend's family currently, or did at the time of the
16 hearing. Does not drive.
17     His former work is fairly modest and limited, as
18 counsel indicated, to working two years for the Watertown
19 Times where his mother was his supervisor. It was a
20 part-time position. And he was fired from the job. He also
21 worked as a stock man and front-end cart pusher at Walmart
22 for thirty hours. He left, according to his testimony,
23 because of issues with his ankle.
24     He has physical issues including those related to
25 the chest, lower back, ankles, his obesity, a hiatal hernia

1   and tremors.  Mentally he suffers from considerable
2   limitations and conditions variously described as depression,
3   anxiety, ADHD, and bipolar disorder.  His mental health
4   treatment dates back at least to November of 2009 where he
5   sought treatment at the Gouverneur Health Clinic.  He has had
6   several periods of hospitalization.  In December of 2009 he
7   was involuntarily committed.  At that point the trigger
8   appears to have been that he heard that his mother and
9   stepfather were intending to shoot the horse that he was
10  having a relationship with.  In March of 2010 he was
11  hospitalized after a suicide attempt and discharged later in
12  stable condition.  In April of 2010 he was again hospitalized
13  with increased depression, and later yet again in April of
14  2010 for an Ambien overdose.
15          He was yet again hospitalized in January and early
16  February of 2011 with suicidal ideations.  In West Virginia,
17  apparently in February of 2011, he was hospitalized for a
18  week, although the record is unclear as to that
19  hospitalization and its cause.  He was hospitalized in May of
20  2011 involuntarily, but discharged with a GAF of between 50
21  and 55 after showing improvement.
22          He spent one night where he self presented in June
23  of 2011.  At that point despite hospitalization he denied
24  suicidal ideation.  He was hospitalized involuntarily in July
25  through early August of 2011.  He was taken there by his

therapist after expressing suicidal ideation.  Yet again hospitalized in January for four days, 2012, for suicidal and homicidal thoughts.  He was taken there by the police after expressing those thoughts.

He has treated with a therapist who he has seen over 100 times, and by psychiatrist Dr. Elizabeth Pierson.  He has been on various medications including Abilify, Celebrex, Ambien, Xanax, Neurontin, Trazadone, Strattera, Gabapentin, Nexium, Loratadine and Atenolol.

Procedurally, the plaintiff applied for Title II and Title XVI benefits in August of 2010, alleging a disability onset date of April 15, 2009.  A hearing was conducted by Administrative Law Judge Elizabeth Koennecke on December 12, 2011.  Judge Koennecke issued a decision on March 1, 2012.  The Social Security Administration Appeals Council denied review of that determination on May 20, 2013.

Plaintiff commenced an action in this court.  The action was terminated based on a stipulated remand of the matter.  That was followed by Social Security Administration Appeals Council order on July 29, 2014.  A hearing was again conducted by ALJ Koennecke on December 3, 2014.  ALJ Koennecke issued a decision on January 13, 2015, and that decision became a final determination of the Agency on August 6, 2015, when the Social Security Administration Appeals Council denied review.

             In her second decision ALJ Koennecke applied the
familiar five-step sequential test for determining
disability, concluded that plaintiff was insured through
September 30, 2010.  He had not engaged in any substantial
gainful activity she found since the alleged onset date of
April 15, 2009.

             She found at step two that the plaintiff suffered
from several severe impairments limiting his ability to
perform work functions, including a mental impairment that
has been variously characterized, as she stated.  The
decision goes on to indicate that the mental impairment has
been described by professionals as paraphilia/zoophilia
sexual disorder, history of attention deficit hyperactivity
disorder, depressive disorder, affective disorder,
personality disorder, and bipolar disorder.

             ALJ Koennecke concluded that the plaintiff's
impairment did not meet or medically equal any of the listed
presumptively disabling conditions, including specifically
12.04 of the listings, because in her view plaintiff's
condition did not meet the B criteria of that listing.

             She then went on to conclude that despite his
conditions, plaintiff retains the residual functional
capacity to lift and/or carry 50 pounds occasionally,
25 pounds frequently, sit for six hours in an eight-hour day,
stand for six hours in an eight-hour day, and walk for six

hours in an eight-hour day.  She concluded the claimant should not work in a job where he has access to animals.  He retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact with others to the extent necessary to carry out simple tasks, handle reasonable levels of simple work-related stress, in that he can make occasional simple decisions directly related to the completion of tasks in a stable, unchanging work environment.  And that she concluded was consistent with the ability to perform less than a full range of medium work.

At step four the ALJ concluded that plaintiff is incapable of performing any of his past relevant work.  She noted that if the grids were applied, a finding of no disability would be required.  She noted, however, that because of the erosion of the job base on which the grids are predicated, testimony from a vocational expert was elicited. With the assistance of that testimony, ALJ Koennecke concluded that plaintiff can perform as a kitchen helper, hand packager and cleaner, three positions that are unskilled at the medium exertional level.

She went on to conclude that even if he were relegated to sedentary work, he could still perform as an

1 order clerk, waxer and addresser.  And, therefore, concluded
2 that plaintiff was not disabled at the relevant times.
3 　　　　　Obviously, the standard of review that I must apply
4 is extremely deferential.  The issue is not whether I think
5 that the plaintiff can and should be able to perform work in
6 the national economy, it is whether the decision is the
7 result of the application of correct legal principles and
8 supported by substantial evidence.
9 　　　　　First with regard to listing 12.04, the ALJ
10 concluded that the B criteria were not met, and I find that
11 that determination is supported by substantial evidence.
12 　　　　　Taking the last first, episodes of decompensation
13 is defined under listing 12.00C4, and that regulation
14 provides in relevant part that the term, "repeated episodes
15 of decompensation, each of extended duration," in these
16 listings means three episodes within one year or an average
17 of once every four months, each lasting for at least two
18 weeks.  I did note earlier that there are decisions, and I
19 cited a couple, that suggest that even if that is not
20 strictly met, there could be a finding of episodes of
21 decompensation as required in the listing.
22 　　　　　I don't think that even with plaintiff's extensive
23 history of hospitalization, that that listing, that portion
24 of the B criteria, could be met, but even if it could, it
25 still would require a finding of marked limitation in one of

```
 1  the remaining areas of the listing, including concentration,
 2  persistence and pace, social functioning and daily living.
 3  And the ALJ's determination in those regards was supported by
 4  substantial evidence, including Dr. Noia's consultative
 5  report, the review conducted by Dr. Bruni, plaintiff's daily
 6  activities, including the daily activities that he testified
 7  to during the two hearings and told his consultative
 8  examiners of his work activity, the fact that his therapist
 9  was encouraging him to work and to find work, memory and
10  concentration.  Even Dr. Pierson, his treating psychiatrist,
11  indicated he had only moderate limitations in understanding
12  and remembering short simple instructions, carrying out short
13  simple instructions, understanding and remembering detailed
14  instructions.
15           So getting back to the repeated episodes of
16  decompensation, the ALJ very carefully considered each period
17  of hospitalization and found that the definition was not met,
18  and I find that that is supported by substantial evidence.
19           So the next issue raised is whether the residual
20  functional capacity finding was supported by substantial
21  evidence.  Specifically whether the rejection of
22  Dr. Pierson's opinions as controlling was proper and properly
23  explained.  ALJ Koennecke went through and carefully showed
24  that Dr. Pierson's notes and the notes of the therapist
25  showed improvement on the part of the plaintiff, showed his
```

1  ability to pursue educational and work opportunities.
2  Indicated that he was going to VESID.  The therapist
3  encouraged the plaintiff to undertake vocational training and
4  education and to look for a job.
5        There was an indication that the record may have
6  been incomplete and there should have been recontact, but
7  I've reviewed this record and I do not find any gaps that
8  required either recontacting treating sources or new
9  consultative exams.  So I understand the arguments of
10 plaintiff, I understand the concern of staleness, but I do
11 believe that the determination of the Commissioner is
12 supported by substantial evidence.  So I will grant judgment
13 on the pleadings to the defendant.  Thank you both for
14 excellent presentations.  Hope you enjoy the rest of your
15 summer.
16       *      *      *
17
18
19
20
21
22
23
24
25

C E R T I F I C A T I O N

    I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter